Weygandt, C. J.
The defendant’s first contention is that the judgment should be reversed and the cause remanded for a retrial. Secondly, he contends that, in the event he is denied a retrial, this court should reduce the degree of the offense from murder in the second degree to manslaughter in the first degree.
Numerous errors are assigned, but only two require discussion by this court.
The first relates to the trial court’s charge to the jury on the lesser included offense of manslaughter. The complaint is that the charge is incomplete and hence erroneous. It reads as follows:
“Whoever unlawfully ldlls another, otherwise than purposely and with deliberate and premeditated malice, and otherwise than purposely and maliciously, and without deliberation and premeditation, is guilty of manslaughter in the first degree. To put it another way, manslaughter in the first degree is the unlawful Mlling by one person of another, either upon a sudden quarrel and upon legal provocation, or unintentionally while the slayer is engaged in the commission of some unlawful act.
“When a person is ldlled under the influence of sudden passion, or in the heat of blood produced by an adequate and reasonable provocation, and before a *551 reasonable time has elapsed for the blood to cool, and for reason to assume its habitual control, and such killing is the result of such temporary excitement induced by such provocation by which the control of reason was disturbed rather than by wickedness of heart or cruelty or wickedness of disposition, it is manslaughter in the first degree.”
The defendant agrees that this statement is correct and contains no error. However, he insists that the trial court should have extended this part of the charge by defining some of the words used, and that failure to do so constituted prejudicial error. But there are at least three difficulties with this contention of the defendant. In the first place, this alleged error clearly is one of omission instead of commission. Second, the record discloses the following colloquy at the conclusion of the charge to the jury:
“The Court (addressing counsel for both parties): Have I omitted anything gentlemen ?
“Mr. Tague: Fine charge.
“Mr. Allen: Fine.
“The Court (addressed to the jury): You may now retire to your jury room and commence your deliberations. When you arrive at a verdict you will notify the bailiff.”
In both civil and criminal cases this court on numerous occasions has commented on the clear duty of counsel under such circumstances to bring to the trial court’s attention any claimed inadequacy and to request that the otherwise correct charge be supplemented by an additional statement. In the first paragraph of the syllabus in the recent controlling decision of this court in the case of State v. Tudor, 154 Ohio St., 249, 95 N. E. (2d), 385, it was held:
“1. Where a trial court gives an instruction in answer to an inquiry of the jury which instruction is in *552 complete but correct as far as it goes, counsel has the duty to request the trial court to charge further so as to eliminate any possible confusion of the jury which may result from incompleteness of such instruction. Any failure to charge further, if it is error, is an error of omission and not of commission. Unless counsel has requested the court to supply the omission, such error will not ordinarily justify reversal even in a criminal case.”
And, furthermore, the defendant concedes the correctness of the trial court’s charge concerning the offense of which he was convicted — murder in the second degree.
Hence, under these circumstances the defendant is without cause for complaint as to the charge on the subject of manslaughter.
The remaining assignment of error requiring discussion by this court is the contention that there is no evidence in the record warranting the verdict of guilty of murder in the second degree. This assignment necessitates an outline of the pertinent facts.
The victim of the killing was a man named Kilbarger' who then was about 34 years of age, weighed about 180 pounds, was five feet, 11 inches tall and had a disabled right arm. At that time the defendant Elfrink was about 50 years of age, weighed about 165 pounds and was over six feet tall. For some years both were employed as workmen at a private school located on a farm near New Lexington, Ohio. On the farm was a house in which the rooms were occupied by a number of employees of the school. Kilbarger had a home in New Lexington but he also had a room in the farmhouse for his own use while serving as driver of the school bus and as a repair man. The defendant Elfrink ’s home was one of the rooms in the farmhouse, and he was employed as a farm hand. The rooms oc *553 cupied by the two men were just inside the entrance and directly across a narrow hall from each other. The men were well acquainted, and after work on the day of the killing they ate their evening dinner at the home of a mutual friend. Then together they drove to a neighboring tavern where they indulged in beer and whiskey and played several games of shuffleboard. Sometime during the evening Kilbarger became disgruntled at his companions and left the place but returned later and threatened to kill the defendant Elfrink. Shortly after ten o ’clock the two returned to the farmhouse. The trip was made in separate automobiles because Kilbarger refused to give Elfrink a return ride. Elfrink reached the farmhouse first. "When Kilbarger arrived a moment later, he left his automobile, attacked Elfrink and threw him to the ground. Then Kilbarger asked Elfrink whether he had enough. After an affirmative reply, Elfrink was allowed to arise. He then went inside the house into his own room and turned on the light. Kilbarger, who had suffered several bruises and a cut lip during the scuffle, likewise went into the house and walked down the hall toward the bathroom. Then he retraced his steps until he stood just outside the door leading into the defendant Elfrink’s room. He did not enter the room but, according to Elfrink, Kilbarger cursed Elfrink and said, “I still try to kill you.” Kilbarger was unarmed but “looked kind of mean.” Elfrink had an unloaded shot gun and a loaded repeating rifle in his room. He said, “I reached for the rifle and tried to push him back with the rifle.” Then from a distance of three or four feet Elfrink fired through the doorway and the bullet entered Kilbarger’s breast. The wound was fatal and Kilbarger collapsed on the floor. Elfrink then fired four more shots into Kilbarger’s head and chest. Elfrink testified that all *554 shots were fired while he was still standing inside his room. However, there is evidence that the last four shots were fired while Elfrink was standing over Kilbarger’s prostrate body in the hall. There is evidence also that of the five shots fired by Elfrink there were three which were of such a nature that any one of them alone would have been fatal.
Under these circumstances can it properly be said that there is no evidence warranting a verdict of guilty of murder in the second degree? This court is of the view that it can not so hold without invading the province of the jury. In the indictment it was charged that Elfrink “unlawfully, purposely and maliciously” killed Kilbarger. The jury so found, and the reason for the verdict is not difficult to find if the jury believed that the defendant fatally shot the unarmed decedent and then fired four more bullets into his head and chest after he was prostrate and dying on the floor.
The judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Taft, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.